IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

vs.                                                                                          CR. No.  08-2831 JCH

**EILEEN CLARK,**

        **Defendant.**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Expedited Motion to Quash All Warrants and Allow Her to Self-Surrender* [Doc. No. 20], filed February 27, 2012.  On March 7, 2012, the Court held a hearing on the motion at which David Foster represented the Defendant and Kyle Nayback represented the government.  At the hearing, the Court received exhibits and heard oral arguments from counsel.  Afterwards, the Court indicated its intent to take the motion under advisement but enter an order staying the arrest warrant for the Defendant only until such time as the parties completed briefing on the Defendant's motion.  On March 30, 2012, the Court entered its Order [Doc. No. 29] temporarily quashing the arrest warrant for Defendant pending further briefing of the matter.  On March 23, 2012, the Defendant filed her memorandum of law in support of her expedited motion to quash, and on April 3, 2012 the government filed its response.  The Defendant filed her reply on April 11, 2012, and the government filed a "supplemental response" on April 25, 2012.  The Court has taken all of the foregoing into consideration, as well as a letter from Defendant's counsel in London.  *See* Doc. No. 33.

Defendant offers several reasons why she believes her arrest warrant should be quashed and

she should be permitted to self-surrender. First, Defendant points out that generally speaking she has led a law-abiding life. She states that, since her arrest in London in 2010 for this crime, she has complied with all conditions of her release on house arrest with electronic monitoring. Second, Defendant provides a London home for two of her three adult children, and if she is forcibly extradited without an opportunity to make other arrangements for them, there is a significant chance that she would lose her home and her children would have no place to live. Third, Defendant also states that she has a herniated disk, panic attacks and agoraphobia, making it difficult for her to travel, especially by plane. As a result, Defendant contends that allowing her to return to the United States on a ship of her choosing would be more humane for her and cheaper for American taxpayers. However, lacking from Defendant's argument are any legal authorities to support quashing an arrest warrant for similar reasons. In fact, the Court suspects that it is not uncommon for the targets of international extradition proceedings to have led law abiding lives in their countries of residence, and for extradition to cause them great personal and familial stress and inconvenience. If these factors alone were enough to justify quashing arrest warrants, then courts regularly would quash warrants on these grounds. However, this does not appear to be the case.

Similarly, Defendant points out that she has a strong statutory affirmative defense to the charges—specifically, that in taking her children to Great Britain, she was fleeing an incidence or pattern of domestic violence. *See* 18 U.S.C. § 1204(c)(2). However, the fact that Defendant may have a strong defense to the charges against her does not appear to the Court to be a reason to quash the warrant. Many defendants have affirmative defenses to pending charges, but those individuals still are arrested and brought before the court. Indeed, it is not for the Court to make a pretrial evaluation of the strength and merit of any defendant's affirmative defenses. And yet, by attaching letters and affidavits from friends who state that Defendant told them that her ex-husband abused

her, it appears that is what Defendant is asking this Court to do.

Finally, Defendant argues that the Court has the inherent power to quash an arrest warrant, and that doing so will not destroy the extradition proceeding pending against her in the UK. She reasons that if the Court allows her to return to New Mexico on her own, it obviates the need for an extradition proceeding, and that if she does not return, then the Court may issue a new warrant and Defendant could be subject to additional sanctions. Again, the Court is unconvinced. While it is true that Defendant's voluntary return to this jurisdiction would render the extradition proceeding moot, Defendant is too cavalier in her description of what will happen if she does not self-surrender as promised. Defendant dismisses the government's representation that the Department of Justice's Office of International Affairs has stated that if the underlying warrant is quashed, the extradition request would no longer be valid because it would fail to meet the requirements of the 2003 extradition treaty between the United States and the United Kingdom, thus undoing hundreds of hours of work in performed in both countries to ensure Defendant's extradition. Instead, Defendant relies upon the language of the extradition treaty between the United Kingdom and the United States ("the Treaty"). Article 8, Section 3(a) of that document provides that a request for extradition must be "supported by . . . a copy of the warrant or order of arrest." Doc. No. 26, Ex.B. Similarly, the United Kingdom's Extradition Act 2003 ("the Act"), Section 78 entitled "Initial stages of extradition hearing," states that the judge must determine whether the papers presented for an extradition hearing include, "in the case of a person accused of an offence, a warrant for his arrest." Doc. No. 27, Ex. B. Defendant contends that the terms of the Treaty and the Act require an active warrant only at the inception of the extradition proceedings, and nothing requires a valid warrant throughout the extradition process. It is true that nothing in the current record shows that the express terms of the Treaty and/or the Act indicates that quashing the warrant will effectively bring an end to the

extradition proceeding. However, what matters is how the British courts interpret the warrant requirement in the Treaty and the Act, and there is nothing in the record on that score. Neither of the two Second Circuit cases that Defendant cites, *Skaftouros v. United States*, 667 F.3d 144 (2d Cir. 2011) (discussing extradition treaty between United States and Greece) and *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009) (discussing extradition treaty between United States and Serbia) sheds light on that question. In fact, *Sacirbey* undermines Defendant's position. In that case, the Second Circuit concluded that a foreign arrest warrant cannot suffice to show that a fugitive is currently charged with an offense, as required by most extradition treaties, where the court that issued the warrant no longer has the power to enforce it. In this Court's view, an arrest warrant that has been quashed cannot be enforced by this Court, nor does it adequately show that Defendant is *currently* charged with an offense such that it can support her extradition to this country.[1]

Based upon the foregoing, the Court concludes that it is not appropriate to quash the arrest warrant in this case.

**IT IS THEREFORE ORDERED** that *Defendant's Expedited Motion to Quash All Warrants and Allow Her to Self-Surrender* [Doc. No. 20] is **DENIED**. This Court's Order of March 30, 2012 temporarily quashing the warrant for Defendant's arrest [Doc. No. 29] is hereby **VACATED**.

_____
**UNITED STATES DISTRICT JUDGE**

---

[1] In a letter to the Royal Courts of Justice dated March 27, 2012, Defendant's British attorneys took the same position, stating "[a] suspension of the US arrest warrant means that the US extradition request to the UK no longer meets the requirements of the Treaty." Doc. No. 31, Ex. 4.